MAZIE DENNISON, ADMINISTRATRIX (ESTATE OF DAVID DENNISON) *v.* LEWIS KLOTZ ET AL. (5056)

BORDEN, SPALLONE and DALY, Js.

Argued September 30—decision released November 10, 1987

*William F. Gallagher,* with whom, on the brief, was *Evelyn A. Barnum,* for the appellant (plaintiff).

*Kevin M. Tepas,* for the appellee (defendant Andrew Priest).

*Barbara N. Bellis,* with whom, on the brief, was *Jack V. Genovese,* for the appellee (defendant Denise Zemke).

BORDEN, J. In this wrongful death action, the plaintiff appeals from judgments rendered in favor of three defendants following the granting of the defendants' motions to strike the plaintiff's complaint.[1] The principal issue of the appeal is whether a passenger in a car owes a legal duty to take action to prevent harm to a fellow passenger who is about to be or has been injured by the conduct of the driver of the car.

The plaintiff raises claims of both procedural and substantive error by the trial court. We find error in the rendering of judgment in favor of the defendant Andrew Priest, and no error with respect to the rendering of judgment in favor of the defendants Jeff Kosky and Denise Zemke.

The plaintiff's original complaint alleged that the plaintiff's decedent, David Dennison, was a passenger in a car being operated by David Martorelli. The defendants, Lewis Klotz, Denise Zemke, Jeff Kosky, and

---

[1] A judgment rendered in favor of the named defendant, Lewis Klotz, was vacated on September 29, 1986, pursuant to the parties' settlement agreement. Klotz, therefore, is no longer a party to this appeal.

Andrew Priest, were also passengers in that car when it collided with a tree, throwing Dennison out of the rear hatchback window and onto the ground behind the car. Thereafter, the driver of the car ran over Dennison, causing his death. In its first count, the original complaint alleged that Dennison's death was proximately caused by the negligence of the defendant passengers in various enumerated ways. In its second count, the complaint set out a claim of negligent infliction of emotional distress.

Priest filed a motion to strike the original complaint, claiming that the complaint failed to state a claim upon which relief could be granted. By memorandum of decision dated September 11, 1984, the trial court, *Fishman, J.,* granted the motion to strike as to the defendant Priest. On September 21, 1984, the plaintiff filed a motion to extend the time within which to replead through October 22, 1984. No action was taken by the court in response to this motion.

On February 18, 1985, the plaintiff filed a request for leave to file a substitute complaint as to all the defendants. The substitute complaint claimed (1) negligence on the part of the four passenger defendants, (2) reckless and wanton misconduct on the part of the four defendants, (3) negligence on the part of the four defendants in that they knew of, or should have known of, the driver's reckless and wanton misconduct, and (4) wrongful infliction of emotional distress.[2] No objections to the request for leave to file a substitute complaint were filed by any of the defendants.

Priest did not file a responsive pleading to the substitute complaint. Instead, on March 1, 1985, Priest filed a motion for judgment on the court's September 11, 1984 order striking the original complaint as

---

[2] The plaintiff's claim for emotional distress was withdrawn, and forms no issue in this appeal.

to him. The plaintiff timely objected to the motion for judgment. On June 26, 1985, the trial court, *D. Dorsey, J.,* granted the motion for judgment.

Thereafter, the defendants Kosky and Zemke each filed a motion to strike the substitute complaint. They claimed that the substitute complaint attempted to state a cause of action between two passengers in a motor vehicle for injuries received by one of the passengers as a result of the operation of the motor vehicle by the driver, and that no such cause of action is recognized in Connecticut. After these motions were granted by the court, *Byrne, J.,* judgment was rendered by the court, *Hale, J.,* for these defendants. This appeal followed.[3]

I

We first consider the rendering of judgment in favor of Priest. The plaintiff raises several claims of error, some of which are procedural in nature while others are more properly viewed as substantive. Because we find procedural error in the court's rendering of judgment necessitating further proceedings, we confine our discussion of the plaintiff's claims, as they relate to this defendant, to the dispositive procedural issue.

The trial court granted Priest's motion for judgment, filed on March 1, 1985, because the plaintiff had failed to replead within the fifteen day period prescribed by

[3] The plaintiff originally filed an appeal as to the defendant Priest immediately following the judgment in favor of that defendant. That appeal, however, was dismissed by this court for lack of an appealable final judgment under the rule of *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 724–25, 443 A.2d 922 (1982). Therefore, this appeal properly raises claims of error relating to the rendering of judgment in favor of Priest pursuant to Practice Book § 157, as well as the later rendering of judgment in favor of the other defendants.

We note that the *Kilbride* rule has been modified by amendments to former Practice Book § 3001, now § 4002.

Practice Book § 157,[4] or within the period referred to in her motion for extension of time. The court held that the plaintiff's attempt to replead thereafter through a request for leave to file a substitute complaint pursuant to Practice Book § 176, was improper, notwithstanding the fact that Priest had not filed an objection to the plaintiff's request. The plaintiff contends that the court erred in granting Priest's motion for judgment. We agree.

Practice Book § 176 provides in pertinent part that "a party may amend his pleadings . . . *at any time* . . . (c) [b]y filing a request for leave to file such amendment, with the amendment appended . . . . " (Emphasis added.) If no objection to the request is filed within fifteen days of the date of the filing of the request, the amendment is deemed to be filed with the consent of the adverse party, and the trial court has no discretion to deny the request. Practice Book § 176; *Darling* v. *Waterford,* 7 Conn. App. 485, 487, 508 A.2d 839 (1986).

Practice Book § 157 does not preclude an attempt to replead under § 176 after the expiration of the fifteen day period following the granting of a motion to strike. Section 157 provides that where no new pleading is filed within the fifteen day period, the court "may upon motion" render judgment against the party whose pleading has been stricken. The use of the phrase "may upon motion" demonstrates that judgment does not enter automatically after the failure to replead during

[4] "[Practice Book] Sec. 157. ——SUBSTITUTE PLEADING; JUDGMENT

"Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

the time period set out in § 157. Since further action is required to obtain judgment, the party against whom judgment is sought may avail herself of the opportunity to request leave to file an amended or substitute complaint pursuant to § 176 at any time prior to the rendering of judgment.

This view of Practice Book § 176 is consistent with the policy underlying General Statutes § 52-121 (a). That statute provides that "[a]ny pleading in any civil action may be filed after the expiration of the time fixed by statute or by any rule of court until the court has heard any motion for judgment by default or nonsuit for failure to plead which has been filed in writing with the clerk of court in which such cause is pending." See also *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980).

When the court in this case considered Priest's motion for judgment upon the plaintiff's original complaint, that complaint had been replaced by the substitute complaint, which was deemed to have been filed with the consent of Priest in the absence of his objection thereto. Since the original complaint was no longer in the case, and Priest had never pleaded in response to the substitute complaint, it was error to render judgment upon the original complaint. See *Wooster* v. *Jerome,* 131 Conn. 266, 38 A.2d 683 (1944). The plaintiff's case against Priest must therefore be remanded for further proceedings upon the substitute complaint.[5]

---

[5] Since we find error in the court's rendering of judgment in favor of Priest on the original complaint, the plaintiff's claim of error regarding the denial of her later motion to set aside that judgment is moot. Additionally, the plaintiff's claim of error regarding the court's granting of Priest's motion to strike the original complaint is also not properly before us. The plaintiff's filing of the substitute complaint operated as a waiver of the right to claim error in the granting of the motion to strike the original complaint. *Royce* v. *Westport,* 183 Conn. 177, 178–79, 439 A.2d 298 (1981).

## II

We next consider whether the plaintiff stated a cause of action in her substitute complaint against the remaining defendants, Kosky and Zemke, both fellow passengers of the plaintiff's decedent. The plaintiff alleged that these defendants were negligent and engaged in reckless or wanton misconduct by failing to maintain a proper lookout and in overcrowding the Martorelli car; in failing to warn the operator of the car that Dennison had been thrown out of the car and was in danger, "when they had the actual ability and authority to control the driver's action by reasonable instructions"; in permitting their faculties to become so impaired by the use of alcohol that they could neither observe Dennison being thrown from the car nor warn the driver of Dennison's peril; and in failing to stop "and render any kind of assistance to their fellow passenger when the same was reasonably necessary under the circumstances" after Dennison was injured by the driver's operation of the car.

It is important to note what the substitute complaint does *not* allege. It does not allege any facts from which it might be determined that the parties were in any relationship, other than as fellow passengers. The complaint does not allege that the defendants engaged in any affirmative action which inflicted harm on Dennison, either by way of direct conduct or by way of encouragement or participation.

The plaintiff claims that the court erred in granting the motions to strike the substitute complaint, filed by the defendants Kosky and Zemke. We disagree.

A motion to strike challenges the legal sufficiency of the allegations of a complaint, and is appropriately granted where there is no basis upon which relief can be granted. Practice Book § 152 (1). "It is axiomatic

that, in passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them." *Schmidt* v. *Yardney Electric Corporation*, 4 Conn. App. 69, 74, 492 A.2d 512 (1985). The trial court determined that the plaintiff's substitute complaint failed to state a cause of action in that the plaintiff "failed to allege a relationship between the decedent and the [defendants] 'by which the latter owes a duty to former.' *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 12, 347 A.2d 102 (1974)." We agree with the trial court.

"Negligence is a breach of duty." *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 304, 93 A.2d 292 (1952). 'To sustain a cause of action [in negligence] the court must determine whether the defendant owed a duty to the plaintiff's decedent . . . . The existence of a duty is a question of law." (Citation omitted.) *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982). With respect to this claim of error, then, the central question to be resolved is whether a passenger in a car owes any legal duty to take action to prevent harm to a fellow passenger who is about to be injured or has been injured by the conduct of the driver of the car.[6]

The plaintiff correctly points out that older Connecticut case law has recognized that, under extreme and particularized circumstances, there may be a very limited duty required of a passenger in an automobile

---

[6] In her brief, the plaintiff also argues that, in adddition to a duty to take action to prevent harm to a third person, a passenger "may be liable for the consequences of a driver's negligent operation of his motor vehicle, where the guest directs or encourages the negligent act or personally cooperates therein." We need not address the viability of this theory of liability, however, because the complaint alleges no such affirmative conduct on the part of the defendants.

"to look out for threatened or possible dangers, and to warn the driver of such after their discovery." *Clarke* v. *Connecticut Co.,* 83 Conn. 219, 224, 76 A. 523 (1910); see also *Boscarello* v. *New York, N. H. & H. R. Co.,* 112 Conn. 279, 152 A. 61 (1930); *Tracy* v. *Welch,* 109 Conn. 144, 145 A.2d 662 (1929). *Clarke* and its progeny suggest only that a passenger who fails properly to carry out this very limited duty may be barred from or limited in her recovery under the doctrines of contributory or comparative negligence. See also 7A Am. Jur. 2d, Automobiles and Highway Traffic §§ 596, 600, 601.

These cases, however, involve only the duty of a passenger in an automobile to exercise reasonable care for her own safety. The general rule with respect to a passenger's duty to exercise care or perform some act for the protection of third parties is otherwise: "[A]n occupant of a motor vehicle other than the driver is not liable for injury to a third person due to the negligence of the driver, in the absence of evidence that the occupant had some control over the driver, or that the driver was in the occupant's employ, or that the driver and the occupant were engaged in a joint enterprise." Id., § 635. The distinction between a failure to act which will constitute a passenger's contributory or comparative negligence, and a passenger's similar failure to act which will not create liability to a third party, is supported by the case law of other jurisdictions; see, e.g., *Martinson* v. *Cagle,* 454 So. 2d 1383, 1386 (Ala. 1984); *Coffman* v. *Kennedy,* 74 Cal. App. 3d 28, 32–33, 141 Cal. Rptr. 267 (1977); *Martino* v. *Leiva,* 133 Ill. App. 3d 1006, 1008, 479 N.E.2d 955 (1985); *Fugate* v. *Galvin,* 84 Ill. App. 3d 573, 406 N.E.2d 19 (1980); *Clark* v. *Mincks,* 364 N.W.2d 226, 231–32 (Iowa 1985); *Akins* v. *Hamblin,* 237 Kan. 742, 703 P.2d 771 (1985); *Anthony* v. *Kiefner,* 96 Kan. 194, 150 P. 524 (1915); *Danos* v. *St. Pierre,* 383 So. 2d 1019, 1021–22 (La. App. 1980), aff'd, 402 So. 2d 633 (La. 1981); *Sloan* v. *Flack,*

150 So. 2d 646 (La. App. 1963); *Olson* v. *Ische*, 343 N.W.2d 284, 287–88 (Minn. 1984); *Moya* v. *Warren*, 88 N.M. 565, 544 P.2d 280 (1975); *Cecil* v. *Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978); *Hale* v. *Allstate Ins. Co.*, 639 P.2d 203, 205 (Utah 1981); *Price* v. *Halstead*, 355 S.E.2d 380, 385–86 (W. Va. 1987); *Reiter* v. *Grober*, 173 Wis. 493, 494–95, 181 N.W. 739 (1921); *Winslow* v. *Brown*, 125 Wis. 2d 327, 371 N.W.2d 417 (Wis. App. 1985); and by the Restatement (Second) of Torts. Compare 2 Restatement (Second), Torts § 495 with 2 Restatement (Second), Torts § 315. See also 2 Restatement (Second), Torts § 315, comment (b).[7]

The reason for distinguishing between passenger conduct which may affect recovery by the plaintiff pas-

---

[7] Comment (b) to § 315 of 2 Restatement (Second) of Torts, which bears the heading *"Distinction between duty to act for another's protection and duty to act for self-protection,"* provides an example which pertains directly to the issues argued by the parties in this appeal: "In the absence of either [a special relationship between the actor and the negligent party which imposes a duty upon the actor to control the third person's conduct, or a special relationship between the actor and the injured party which gives to the injured party a right of protection], the actor is not subject to liability if he fails, either intentionally or through inadvertence, to exercise his ability so to control the actions of third persons as to protect another from even the most serious harm. This is true although the actor realizes that he has the ability to control the conduct of a third person, and could do so with only the most trivial of efforts and without any inconvenience to himself. *Thus if the actor is riding in a third person's car merely as a guest, he is not subject to liability to another run over by the car even though he knows of the other's danger and knows that the driver is not aware of it, and knows that by a mere word, recalling the driver's attention to the road, he would give the driver an opportunity to stop the car before the other is run over.* On the other hand, under the rule stated in § 495, the actor is guilty of contributory negligence if he fails to exercise an ability which he in fact has to control the conduct of any third person, where a reasonable man would realize that the exercise of his control is necessary to his own safety. *Thus if the actor, while riding merely as a guest, does not warn the driver of a danger of which he knows and of which he has every reason to believe that the driver is unaware, he becomes guilty of contributory negligence which precludes him from recovery against another driver whose negligent driving is also a cause of a collision in which the actor himself is injured."* (Emphasis added.)

senger, and passenger conduct sought to be used as a basis for liability to other persons, has been variously stated. In *Olson* v. *Ische,* supra, 287, the Supreme Court of Minnesota explained: "A passenger has, of course, a legal duty to use care for his own safety, and his contributory negligence will bar or diminish his own claim. He may also have a moral duty owed to others not to encourage the driver to drive when he should not be driving. But to impose a legal duty on the passenger, which makes him liable to others on the highway for what the driver himself chooses to do, seems to us, as a general proposition, inappropriate. Such a rule assumes, incorrectly, that a passenger somehow shares in the management of the motor vehicle, and it further assumes the driver is amenable to the passenger's influence." Likewise, in distinguishing between these two rules of law, the Supreme Court of Wisconsin reasoned: "A person may well be content to trust his own safety to a driver, and yet not be willing to indemnify third persons who may suffer through his negligence. He may say, so far as I am concerned his negligence is my negligence, but I do not agree to become responsible to others for his negligence. To extend the doctrine to that degree would make a guest in a private conveyance an insurer of third persons against the negligence of the driver. Instead of being invested with the liabilities of a guest he would shoulder those of a master." *Reiter* v. *Grober,* supra, 495.

For a more practical reason, also, we are hesitant to impose liability under the circumstances of this case. If liability to an injured third party attached to the inaction of a passenger, we perceive no justifiable reason not to extend similar liability to third parties, such as witnesses or bystanders, who were or should have been aware of the danger posed by the driver's conduct but failed to take some preventive action. See *Martinson* v. *Cagle,* supra; (noting that any observer who knew

the driver was intoxicated was in the same position as a passenger having no legal duty to take preventive action).

The plaintiff's reliance upon § 322 of the Restatement (Second) of Torts to support a duty to Dennison does not help her argument.[8] Section 322 and the comments thereto make clear that the duty to aid contemplated by that section is predicated upon the actor's "act, or an instrumentality within his control, [which] has inflicted upon another such harm that the other is helpless or in danger." 2 Restatement (Second), Torts § 322, comment (a). The distinguishing feature between this case and a situation where § 322 is applicable, is that here there was simply no act by either defendant passenger which inflicted harm on the plaintiff's decedent, and there is no allegation that the car was within the control of either defendant passenger. Further, the applicability of § 322 to a situation analogous to this case has been rejected elsewhere: "A passenger is under no legal duty to stop and give assistance to a person injured by the car in which he is riding, unless the passenger's conduct caused the accident or there is some special relationship either between the passenger and the driver that would make the passenger jointly responsible with the driver for the accident, or between the passenger and the injured party independently giving rise to such a duty to aid." *Cecil* v. *Hardin,* supra.

The substitute complaint contains two separate allegations of overcrowding of the car on which the plaintiff relies to bring herself within the scope of § 322. They are that the defendants overcrowded the vehicle and thus placed Dennison in a position of peril in the

---

[8] "[Restatement (Second) Torts] § 322. DUTY TO AID ANOTHER HARMED BY ACTOR'S CONDUCT. If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise care to prevent such further harm."

hatchback part of the car; and that they overcrowded the car by having an unsafe number of persons in it, hampering the driver's post-impact vision and operation of the car, and "thus placed [Dennison] in a position of peril . . . . " The plaintiff's reliance on § 322 is misplaced. Section 322 rests on the premise that the defendant, by conduct or by an instrumentality under his control, inflicted harm on the plaintiff. Under the circumstances presented here, the plaintiff's allegations that the defendants placed Dennison in a perilous position fall short of an allegation that they inflicted harm on him.

There is no allegation that the defendants coerced or persuaded Dennison into sitting in an obviously unsafe part of the car, or that they did anything which imperiled him other than their seating arrangement. We simply do not believe that the requirement of § 322 that the defendant "has caused . . . bodily harm to another"; see footnote 8, supra; can legitimately be read to include the allegation that, by their seating arrangement, the defendants placed Dennison in a position of peril. Additionally, we fail to see how to determine which of four passengers in a three-passenger car has caused the overcrowding—the first to enter the car, the last to enter the car, or the passenger who sat in a nonpassenger compartment.

With respect to the allegation that the overcrowding of the car placed Dennison in a position of peril because it hampered the driver's vision and operation of the car, the plaintiff conceded in oral argument in this court that this allegation relates only to Dennison's position after having been thrown from the car. Thus, it does not constitute an allegation that the defendants inflicted harm on him.

We hold that in the absence of an allegation of facts showing a special relationship between the parties or

between the defendant and the driver, or in the absence of an allegation of facts showing that the driver and the defendant were engaged in a joint enterprise, inaction by a defendant passenger does not give rise to liability to a fellow passenger or other third party injured by the driver's conduct. Accordingly, the court properly granted the motions to strike filed by Kosky and Zemke.[9]

There is error with respect to the judgment in favor of the defendant Andrew Priest, that judgment is set aside and the case is remanded to be proceeded with according to law.

There is no error with respect to the judgment in favor of the defendants Jeff Kosky and Denise Zemke.

In this opinion the other judges concurred.

---

[9] The plaintiff's allegations of reckless and wanton misconduct do not require a different result. Where, as here, there is no legal duty to act, the plaintiff cannot create one simply by describing the defendant's conduct in more blameworthy terms.